In the Matter of the Claim of MRS. L. KOEHLER, Respondent, against ARMOUR AND COMPANY, Appellant.
WORKMEN'S COMPENSATION BOARD, Respondent.

Third Department, February 26, 1954.

*John E. Knauf* for appellant.

*Nathaniel L. Goldstein, Attorney-General* (*Carl Madonick* and *Roy Wiedersum* of counsel), for Workmen's Compensation Board, respondent.

*Per Curiam.* This appeal involves a question of law only. In 1941 the then value of unpaid death benefits awarded by reason of the compensable death of claimant's husband was computed and paid into the Aggregate Trust Fund by Armour and Company's insurance carrier. In 1951, it was discovered that the computation had been based upon an erroneous date of birth of the claimant-widow. Following a recomputation the Workmen's Compensation Board made a decision and award directing employer and its insurance carrier to pay into the Aggregate Trust Fund the additional sum of $1,548.60. The insurance carrier, a foreign stock insurance company, was dissolved in 1946 and is now conceded to fall in the category of an insolvent stock carrier within the meaning of sections 106–109-j of article 6-A of the Workmen's Compensation Law.

Therefore, the net result of the board's decision is a direction that the employer itself make the payment. Armour and Company has appealed from the decision and award, contending that section 109-c, read in the light of the scheme of article 6-A, is designed to relieve an employer from the effect of liability imposed by section 53 as well as to provide compensation benefits for unpaid claimants and appropriate Special Funds.

Section 107 establishes the Stock Workmen's Compensation Security Fund (hereinafter referred to as the Stock Fund) and provides for its administration by the Superintendent of Insurance. Section 108 provides for payments to the fund. Sections 109-d and 109-e have to do with the Mutual Workmen's Compensation Security Fund, with which we are not now concerned. Section 107 declares that the Stock Fund " shall be applicable to the payment of awards for compensation or death benefits and to the payment of benefits into the special funds * * * remaining unpaid, in whole or in part, by reason of the default, after the effective date of this act, of an insolvent stock carrier * * *."

It thus appears that the stated and primary purpose of article 6-A is to provide protection for those entitled to compensation and death benefits awards and for payments to the Special Funds therein named.

Section 109-c directs that final awards for compensation or death benefits or payment of benefits into designated Special Funds " shall be paid from the stock fund in the manner provided in this section. The chairman or any person in interest may file with the superintendent of insurance an application for payment of compensation or death benefits or special fund benefits from the stock fund on a form to be prescribed and furnished

by the superintendent. If there has been an award, final or otherwise, a certified copy thereof shall accompany the application. The superintendent of insurance shall thereupon certify to the commissioner of taxation and finance such award for payment according to the terms of the same." In subdivisions 3 and 4 of section 109-c the Stock Fund is precluded from recovering against the employer an award paid by it and provision is made for subrogating the employer, under specified circumstances, to the rights of the employee or other party in interest against such fund.

Nonetheless, the matter of payments from the Stock Fund requires an application by the Chairman of the Workmen's Compensation Board or by a party in interest. Then, presumably, there must be a determination in the first instance whether or not the case falls within the provisions of article 6-A.

Clearly the Workmen's Compensation Board is not a " person in interest ". It is equally clear that the board has no statutory authority to direct the chairman to make such an application, nor does it have any jurisdiction over the Aggregate Trust Fund or the Stock Fund.

The board makes awards and has power (Workmen's Compensation Law, § 142) " to require or permit employers to deposit the present value of awards in the aggregate trust fund of the state fund ". It has performed its duty and exercised its power as to the only persons subject to its jurisdiction and has thereby reached the limit of its authority in this matter. In its decision it comments on employer's contention in these words, " On the question of liability of the Stock Workmen's Compensation Security Fund, a reading of the statute clearly indicates that the Board has no authority to order payment by the said fund. If the matter is subject to the provisions of Article 6-A the employer, after making payment, may file with the Superintendent of Insurance an application for reimbursement. We therefore find that the referee properly directed the employer and carrier, the only parties over which the Board has jurisdiction, to pay into the Aggregate Trust Fund the additional amount due on the basis of the corrected computation."

Section 53 of the Workmen's Compensation Law states that an employer, not insured with the State Fund, is not " relieved from the liability for compensation prescribed by this chapter except by the payment thereof by himself or his insurance carrier."

Appellant suggests that it would be a simple and expeditious solution for the board or its chairman, as an interested party,

to submit the appropriate application to the Superintendent of Insurance. In the light of what has been said as to the board's powers, such a suggestion is an oversimplification and presupposes authority on the part of the board to control the actions of the chairman, its administrative head, and of the Superintendent of Insurance, charged by statute with the proper administration of the Stock Fund.

The decision and award should be affirmed, with costs to the Workmen's Compensation Board.

FOSTER, P. J., BERGAN, COON, HALPERN and IMRIE, JJ., concur.

Decision and award affirmed, with costs to the Workmen's Compensation Board.